**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Allstate Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING PLAINTIFF'S MOTION** |
| vs. | ) | **FOR SUMMARY JUDGMENT AND DENYING** |
| | ) | **DEFENDANTS' MOTION FOR SUMMARY** |
| Paul and Cheri Berge, o/b/o | ) | **JUDGMENT** |
| Ashley Berge, deceased, and | ) | |
| Claude and Marleen Streeper, | ) | Case No. 1:06-cv-060 |
| and Mark Streeper, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Before the Court is the Plaintiff's Motion for Summary Judgment filed on October 1, 2007.

The defendants, Paul and Cheri Berge, filed a response in opposition to the motion and a cross-

motion for summary judgment on October 12, 2007.  The Plaintiff filed reply briefs on October 24,

2007, and November 5, 2007.  Defendants Claude and Marleen Streeper filed a response on October

29, 2007.  For the reasons outlined below, the Plaintiff's motion is granted, and the Defendants'

motion is denied as moot.


I.      **BACKGROUND**

This is a coverage dispute involving the interpretation of an exclusionary clause in an

insurance policy.  The plaintiff, Allstate Insurance Company (Allstate), filed a declaratory judgment

action seeking a ruling that its named insureds under a condominium owners insurance policy,

defendants Claude Streeper and Marleen Streeper,  have no coverage and that Allstate has no duty

to defend an action brought by the defendants, Paul Berge and Cheri Berge.

This case arises out of the death of 16-year-old Ashley Berge, the daughter of Paul Berge and Cheri Berge.  On November 29, 2004, Mark Streeper, the 25-year-old son of Claude and Marleen Streeper, invited Ashley Berge and two of her friends over to the Streeper residence where Mark Streeper lived.  Claude and Marleen Streeper were out of town during the day of November 29, 2004, and returned home late in the evening.  See Docket No. 7, ¶ 4.

Additional guests arrived at the Streeper residence and, at some point in the evening, Mark Streeper and his guests began consuming alcohol that Mark had purchased.  North Dakota v. Streeper, 727 N.W.2d 759, 761 (N.D. 2007).  Later that evening, several of Mark Streeper's guests said that they watched Mark "crush some pills, mix them with water, and then fill a syringe with the mixture."  Id.  Three witnesses said that Mark Streeper inserted the syringe in Ashley Berge's arm and injected the mixture.  Id.  Ashley Berge "crashed" at Mark Streeper's residence following an evening of drug and alcohol use.  Around 11:30 a.m. the next morning, Mark Streeper was awakened by a telephone call from Ashley Berge's employer who was looking for her.  Upon receiving the phone call, Mark Streeper was unable to awake Ashley Berge, and she was later pronounced dead at the scene by paramedics.  The cause of death was an overdose of drugs and alcohol provided to Ashley Berge by Mark Streeper.  The medical examiner determined that Ashley Berge was injected with a drug cocktail of Oxycodone, Methadone, and Zanax and, at the time of her death, had a blood alcohol concentration of 0.26 percent, which is more than three times the legal limit in North Dakota.  See Docket No. 38, p. 3.

Mark Streeper was subsequently charged with and convicted of manslaughter in state court for the death of Ashley Berge.  On appeal, the North Dakota Supreme Court affirmed the jury

verdict.  <u>North Dakota v. Streeper</u>, 727 N.W.2d 759 (N.D. 2007).  The Berges admit that Mark
Streeper's actions were intentional or criminal.

The record reveals that Allstate Insurance Company had issued a condominium owners
policy to Claude and Marleen Streeper.  <u>See</u> Docket No. 38-3.  The condominium owners policy
covered the period of time from February 28, 2004, to February 28, 2005, and was in effect at the
time of this incident on November 29, 2004.  <u>See</u> Docket No. 38-2.  Allstate contends that the
Berge's claims are excluded from coverage for bodily injury that results from the intentional or
criminal acts of any insured person.  The Berges contend that the claims against Claude and Marleen
Streeper are for "occurrences" separate and distinct from the actions of Mark Streeper and are not
excluded.  The Berges also contend that the criminal acts exclusion does not preclude coverage for
all insured persons based on the criminal acts of a single insured.


## II.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if there is no genuine issue of material fact and the moving
party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322 (1986). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of
summary judgment . . . against a party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on which that party will bear the burden
of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.  If the moving party has supported its motion for
summary judgment, the non-moving party has an affirmative burden placed on it to go beyond the
pleadings and show a genuine triable issue of fact.  <u>Commercial Union Ins. Co. v. Schmidt</u>, 967 F.2d
270, 271 (8th Cir. 1992).  However, the court considering a motion for summary judgment must

view the evidence in the light most favorable to the non-moving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts."  <u>Vacca v. Viacom Broadcasting of Missouri, Inc., et al.</u>, 875 F.2d 1337, 1339 (8th Cir. 1989).


III.    <u>**LEGAL ANALYSIS**</u>

This action is based on diversity jurisdiction.  The Court will apply the substantive law of North Dakota.  <u>Paracelsus Healthcare Corp. v. Philips Med. Sys.</u>, 384 F.3d 492, 495 (8th Cir. 2004). In the absence of controlling North Dakota law, the Court is obligated to predict what North Dakota law is based on "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data."  <u>Bockelman v. MCI Worldcom</u>, 403 F.3d 528, 530 (8th Cir. 2005) (quoting <u>BoBass v. Gen. Motors Corp.</u>, 150 F.3d 842, 846-47 (8th Cir. 1998)).

It is well-established in North Dakota that the interpretation of an insurance policy is a question of law.  <u>Fisher v. American Family Mutual Ins. Co.</u>, 579 N.W.2d 599 (N.D. 1998).  The standard for construing an insurance contract in North Dakota is as follows:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured.

<u>ACUITY v. Burd & Smith Const., Inc.</u>, 721 N.W.2d 33 (N.D. 2006) (quoting <u>Ziegelmann v. TMG Life Ins. Co.</u>, 607 N.W.2d 989 (N.D. 2000)).

A.      **CONDOMINIUM OWNERS POLICY**

The Condominium Owners Policy acquired by the Berges from Allstate provides family

liability and guest medical coverage through the following provision:

**Losses We Cover Under Coverage X:**

Subject to the terms, conditions, and limitations of this policy, **Allstate** will pay
damages which an **insured person** becomes legally obligated to pay because of
**bodily injury** or **property damage** arising from an **occurrence** to which this policy
applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an
**insured person**.  If an **insured person** is sued for damages, we will provide a
defense with counsel of **our** choice, even if the allegations are groundless, false or
fraudulent.  **We** are not obligated to pay any claim or judgment after **we** have
exhausted our limit of liability.

<u>See</u> Docket No. 38-3, pp. 16-17 (emphasis in original).  The family liability provision also contains

an exclusion which reads as follows:

**Losses We Do Not Cover Under Coverage X:**

**We** do not cover any **bodily injury** or **property damage** intended by, or which may
reasonably be expected to result from the intentional or criminal acts or omissions
of any **insured person**.  This exclusion applies even if:

a) Such **insured person** lacks the mental capacity to govern his/her conduct;
b) Such **bodily injury** or **property damage** is of a different kind or degree
than intended or reasonably expected; or
c) Such **bodily injury** or **property damage** is sustained by a different person
than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually
charged with or convicted of a crime.

<u>Id.</u> at 17 (emphasis in original).

For purposes of the Condominium Owners Policy, an "occurrence" is defined as follows:

5

9.      **"Occurrence"** – means an <u>accident</u>, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage.

<u>Id.</u> at 3 (emphasis added).

The Condominium Owners Policy defines the term "insured person" as follows:

3.  **Insured Person(s)** - means **you** and, if a resident of **your** house

a.) any relative; and
b.) any dependent person in your care.

<u>Id.</u> at 2 (emphasis in original).  The policy provides the duties insured persons have to each other as follows:

The terms of this policy impose <u>joint obligations on persons defined as an insured person</u>.  This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

<u>Id.</u> at 3 (emphasis added).

## B.      CRIMINAL ACTS EXCLUSION

The Berges contend that the claims of negligence asserted against Claude and Marleen Streeper are not excluded from coverage.  The Berges contend that the negligence claims are separate "occurrences" as defined by the insurance policy and thus are not excluded from coverage by the criminal acts or omissions of Mark Streeper.  The Berges also contend that the criminal acts of Mark Streeper should not apply to the negligent acts of the Streepers so as to preclude coverage under the policy.  Neither party disputes that Claude Streeper and Marleen Streeper are "insured persons" as defined by the policy.

The Berges acknowledge that Mark Streeper's acts were either intentional or criminal and are expressly excluded from coverage under the condominium owners policy.  However, the Berges contend that the exclusion for intentional or criminal acts of any insured person does not preclude coverage for the negligence claims brought against the parents, Claude Streeper and Marleen Streeper.  The Berges essentially argue that the criminal misconduct of Mark Streeper should not be binding on his parents who are also "insured persons" as defined in the condominium owners policy.

In a separate state action brought by the Berges against Allstate, the Berges have alleged the following claims of negligence against Claude Streeper and Marleen Streeper:

1)   Negligence in monitoring minor invitees of their residence, include Ashley Berge;

2)   Negligence in monitoring their son and resident of their household, Mark Streeper, particularly in light of his known drug addiction and habits;

3)   Failure to warn minors and invitees, including Ashley Berge, of the known drug use and risk-taking behaviors of Mark Streeper;

4)   Negligence in monitoring the drug purchase and use of their son and resident, Mark Streeper;

5)   Negligence in permitting Mark Streeper access to prescription drugs on this and prior occasions;

6)   Negligence in monitoring alcohol purchase, consumption and use on their premises; and

7)   Negligence in commencement and use of emergency life-savings efforts on Ashley Berge

See Docket No. 46.

While the Allstate policy provisions at issue in this case have not been interpreted under North Dakota law, the Eighth Circuit has interpreted identical provisions under analogous factual

7

circumstances.  In <u>Allstate Ins. Co. v. Blount</u>, 491 F.3d 903 (8th Cir. 2007), an insured homeowner

was convicted of involuntary manslaughter for providing her home to minors for the consumption

of alcohol and controlled substances which caused the death of a minor who was a guest.  <u>Id.</u> at 906.

The mother of the victim brought separate negligence claims against the insured homeowner.

Allstate commenced a declaratory judgment action in federal court seeking a determination that

there was no duty to defend or indemnify the insured homeowner based on the criminal acts

exclusion for "bodily injury or property damage intended by, or which may be reasonably expected

to result from the intentional or criminal acts or omissions of, any insured person."  491 F.3d 903,

906.  The Eighth Circuit held that the negligence claims were specifically excluded by the criminal

acts exclusion in the policy:

> Without [the insured's] underlying act of providing her home to minors for the
> consumption of alcohol and/or controlled substances without supervision, there
> would be no injury and no basis for the wrongful death suit. In other words, any
> negligent failure to supervise, control, protect and provide assistance to [the victim],
> or any negligent creation of a substantial risk to his life, was derivative of, not
> independent of, [the insured's] act of providing her home to the minors for the
> consumption of alcohol and controlled substances without adult supervision.

Id. at 911 -912.

In <u>Allstate Ins. Co. v. Steele</u>, 74 F.3d 878 (8th Cir. 1996), a twelve-year-old girl was raped

by her sixteen-year-old stepbrother while she was visiting her father and stepmother.  The parents

of the twelve-year-old girl sued the minor rapist for assault, battery and intentional infliction of

emotional distress, and also sued the father and stepmother for negligent supervision, negligent

failure to protect, and negligent infliction of emotional harm.  <u>Id.</u> at 879.  Allstate commenced a

declaratory judgment action seeking a determination that its homeowners policy did not provide

coverage for the damages arising from the teenager insured's sexual contact with his stepsister.  The

federal district court found that the negligence claims were barred by the policy's joint obligations

provision which provided as follows:

> The terms of this policy impose joint obligations on persons defined as an insured
> person. This means that the responsibilities, acts and failures to act of a person
> defined as an insured person will be binding upon another person defined as an
> insured person.

Id. at 881.  In affirming the district court's decision, the Eighth Circuit noted:

> We admit to finding this provision more than a little mysterious, but we note that
> most courts that have interpreted it have found that an insured's intentional acts bar
> claims against other insureds for negligent supervision.

Id. (citations omitted).  The Eighth Circuit continued:

> Even if the joint obligations clause did not bar Lynn Steele's claims, however, other
> policy language precludes recovery for negligent supervision. As we have already
> noted, the policy does not cover damages "resulting from" intentional misconduct.
> In Fillmore v. Iowa Nat'l Mutual Ins. Co., 344 N.W.2d 875, 877-81
> (Minn.Ct.App.1984), the court considered whether a policy that did not cover
> damages "arising out of" the use of a motor vehicle precluded recovery for parents'
> negligent supervision. The claimants had sued the policyholders for negligent
> supervision after the policyholders' intoxicated son injured them in an automobile
> accident. Id. at 876-77. The court held that even if the parents were negligent, the
> claimants would not have been injured but for the fact that the son was driving. Id.
> at 880-81. The court concluded that the policy did not cover the negligence claims
> since the injuries "arose out of" excluded conduct. Id. at 879-80; see also Faber v.
> Roelofs, 250 N.W.2d 817, 822-23 (Minn.1977). Similarly, in the instant case, even
> if we assume that the Steeles failed to supervise James O'Hara adequately, B.S. and
> K.S. would not have been injured but for the younger O'Hara's intentional
> misconduct. Therefore the harm "resulted from" an intentional act, and Lynn Steele
> cannot circumvent the policy's intentional conduct exclusion by suing the Steeles for
> negligent supervision. See generally George J. Couch, 10 Couch on Insurance 2d §
> 41:33 at 52 (rev. ed. 1982) ("if either of two causes could have caused the [injury],
> and one is accidental and the other not, recovery is precluded").

Id.

Finally, in EMCASCO Ins. Co. v. Diedrich, 394 F.3d 1091 (8th Cir. 2005), an insured

operator of a home daycare was sued for negligent supervision by the parent of a child who had been

sexually molested at the daycare by the named insured's son.  In addressing the policy exclusions, the Eighth Circuit noted:

> Neither party contests that the insurance policy would not cover (and EMCASCO would not be required to defend) suits against one of the insureds alleging intentional conduct by that insured, including claims of sexual molestation. However, appellants argue that because the insured Edith Diedrich was sued in negligence, and not vicariously for the intentional tort of her son, that the son's acts should be considered separate "occurrences" under the insurance policy.

394 F.3d 1091, 1094-1095.

The appellants also argued that because the negligence of the insured in supervising her son was independent from her son's intentional acts, the "intentional acts" and "sexual molestation" exclusions in the policy did not apply.  Id. at 1095.  In other words, the appellants argued that "EMCASCO has a duty to defend the [insured parents] because the 'occurrence' being alleged in the state court suit is a failure of the [insured parents] to supervise [their son], resulting in the unexpected or unanticipated occurrence of [the insured son's] molestation."  Id.

In finding that the "intentional acts" exclusion precluded coverage under the policy for both the intentional tort of the son, as well as the negligence claims asserted against the insured parent, the Eighth Circuit specifically stated:

> Courts construing similar [intentional acts exclusionary] policy language have concluded that, when a provision uses the article "the," the [exclusion] applies only to claims brought against the particular insured named in the claim. Conversely, when the exclusionary language refers to intentional acts of " an insured," courts have uniformly concluded that the exclusion applies to all claims which arise from the intentional acts of any one insured, even though the claims are stated against another insured.

Id. 1095 (citing N. Sec. Ins. Co. v. Perron, 172 Vt. 204, 777 A.2d 151, 163 (2001) (citing cases applying Alaska, California, Florida, Louisiana, Maine, New Hampshire, Tennessee, and Washington law) (footnote omitted); accord Am. Family Mut. Ins. Co. v. Mission Med. Group, 72

F.3d 645, 648 (8th Cir.1995) (citing cases from California, Florida, and Michigan law "applying the exclusion to a co-insured who has not participated in the underlying intentional act")).  The Eighth Circuit continued:

> The injury that gives rise to the state court lawsuit-the sexual molestation of M.S.-was intended by [the insured's son] and clearly constitutes an intentional act within the policy exclusion.

394 F.3d 1091, 1096.

Other jurisdictions have followed the logic and rationale of the Eighth Circuit, have interpreted policy language identical to that in this case, and have held that the joint obligation provision of the Allstate insurance policy renders the criminal acts exclusion applicable to claims against all other insured persons.  See Allstate Ins. Co. v. Ervin, No. Civ. A. 05-02800, 2006 WL 2372237, (E.D. Pa., August 14, 2006);  Allstate Ins. Co. v Grimes, Case No. M2003-01542-COA-R3-CV, 2004 WL 2533826 (Tenn. Ct. App. 2004).  However, at least one state court has interpreted an identical criminal exclusion provision and joint obligation provision as excluding coverage only as to the insured who committed the intentional or criminal act.  Wasik v. Allstate Ins. Co., 813 N.E. 2d 1152, 1157-1158 (Ill. App. 2 Dist. 2004).  The Wasik court stated that exclusionary clauses are to be construed narrowly, and the joint obligation provision is susceptible to multiple interpretations and therefore ambiguous.  The Wasik court held that the joint obligation provision does not exclude coverage for an innocent insured when another insured has intentionally or criminally caused a loss.  Id. at 1158.  The Court declines to follow the reasoning in Wasik and adopts the reasoning and rationale of the Eighth Circuit Court of Appeals.

Even assuming that the alleged negligent acts of Claude Streeper and Marleen Streeper constitute separate "occurrences" under the condominium owners policy, the plain and unambiguous

language of the policy clearly excludes coverage for bodily injury arising from or resulting from the intentional or criminal acts of any insured person, even though the claims are stated against a co-insured. In other words, the criminal acts or omissions of any person defined as an "insured person" (Mark Streeper) will be binding upon all others who are also defined as "insured persons" under the policy. The criminal exclusion provision in the Allstate policy at issue provides in part:

> **We** do not cover <u>any **bodily injury**</u> or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of <u>any **insured person**</u>.

<u>See</u> Docket No. 38-3, p. 17 (underlined emphasis added). More important, the joint obligations provision provides as follows:

> The terms of this policy impose <u>joint obligations on persons defined as an insured person</u>. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

<u>Id.</u> at 3 (emphasis added).

The focus of the inquiry is whether bodily injury resulted from an intentional or criminal act of any insured person. If such an injury occurred, insurance coverage is excluded regardless of the type of claim asserted against other insured persons. There is clearly no coverage for negligence claims made against co-insureds arising from the intentional or criminal acts of any other insured. Thus, the claims of negligence asserted against the Streepers are barred by the intentional or criminal acts exclusion in the Allstate condominium owners policy, particularly when read in conjunction with the joint obligations provision in the policy. Ashley Berge's death would not have occurred but for the fact that Mark Streeper, an "insured person" under the Allstate policy, injected her with a lethal drug cocktail. The intentional and/or criminal acts of Mark Streeper are binding upon all other persons defined as "insured persons" which clearly and unequivocally include his parents,

12

Claude Streeper and Marleen Streeper.  The fact that the parents did not engage in any criminal behavior is immaterial because the Allstate policy exclusions apply to the criminal behavior of any insured.

The Court finds no ambiguity in the language of the Allstate condominium owners policy that would lead an insured to believe that the insurer would provide coverage for losses arising out of the intentional or criminal acts of any insured person.  The Court concludes, as a matter of law, that the intentional or criminal acts exclusion in the Allstate policy applies to <u>all</u> claims which arise from the intentional or criminal acts or omissions of any insured, even though the claims may be based in negligence and asserted against a co-insured.  In summary, the intentional or criminal acts of Mark Streeper bar all claims against other "insured persons" for negligence because such claims are derivative of, not independent of, Mark Streeper's criminal misconduct.  By excluding coverage for injury or damage caused by the intentional or criminal acts of any "insured person," Allstate unambiguously excluded coverage for negligence claims asserted against other co-insureds which arise from the intentional/criminal acts of Mark Streeper.  The insurance policy's intentional or criminal acts exclusion cannot be circumvented by suing Mark Streeper's parents based on claims of negligence.


## IV.    <u>CONCLUSION</u>

The Court finds that Ashley Berge's bodily injuries were directly caused by Mark Streeper's intentional or criminal acts that occurred on or about November 29, 2004.  The Court concludes, as a matter of law, that the intentional or criminal acts exclusion applies to all claims which arise from the intentional or criminal acts of any insured, even though additional claims are asserted against

other "insured persons" or co-insureds in a different form.  The Allstate condominium owners policy unambiguously excludes from coverage the intentional or criminal acts of <u>any</u> insured which is binding on all other insured persons.  For the reasons set forth above, Allstate's Motion for Summary Judgment (Docket No. 36) is **GRANTED**, and Paul and Cheri Berge's Motion for Summary Judgment (Docket No. 41) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 6th day of November, 2007.

*/s/ Daniel L. Hovland*

Daniel L. Hovland, Chief Judge
United States District Court

14